UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

MICHAEL SCOTT,

       Petitioner,                    07 Civ. 3395 (KMK)(LMS)

  - *against* -

                                           **REPORT AND**
JOSEPH T. SMITH, Superintendent,     **RECOMMENDATION**
Shawangunk Correctional Facility,

       Respondent.

───────────────────────────────────────────────

TO:    THE HONORABLE KENNETH M. KARAS,
         UNITED STATES DISTRICT JUDGE

       Petitioner, Michael Scott ("Petitioner"), proceeding *pro se*, files this petition for a Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2254, challenging his conviction under Westchester County Indictment Number #00-00408 of one count of Murder in the Second Degree/Depraved Indifference Murder (N.Y. Penal Law § 125.25(2)) and one count of Reckless Endangerment in the First Degree (N.Y. Penal Law § 120.25). Pet. at 2. On May 9, 2001, Petitioner was sentenced in the County Court of Westchester County to an indeterminate term of twenty-two years to life on the murder count and to a consecutive indeterminate term of two and one-third to seven years on the reckless endangerment count. Aff. in Opp. to Pet. at 5; T6: 19-20.[1] Petitioner is currently incarcerated at the Clinton Correctional Facility in Dannemora, New York. Notice of Change of Address, Docket #16.

       Petitioner seeks habeas relief on one ground: (1) that Petitioner's due process rights were

───────────────

      [1]Hereinafter, "T6" refers to the trial transcripts dated May 9, 2001.

1

violated because his conviction for Depraved Indifference Murder and Reckless Endangerment was not supported by legally sufficient evidence. Pet. at 5-6; Resp't Ex. A (Appellate Brief).[2]

## I. BACKGROUND

### A. The Crime

On March 11, 2000, Petitioner and his friend, Lawrence Jemison ("Jemison") spent part of the afternoon trying to sell a shotgun to a man at 50 Hawthorne Street. T: 101-2.[3] When that effort failed, Petitioner and Jemison went to the apartment of David Marshall ("Marshall") so that Petitioner could retrieve a gun from Marshall. T: 102-3. When Marshall answered the door, Petitioner demanded that Marshall give him the gun, a Ruger nine millimeter. T: 103. Marshall said he did not have the gun but that he would make a call to someone to bring it over to the apartment. Id. When Marshall returned to the door after making the phone call, he saw the shotgun in Petitioner's hand and "asked him what was that for." T: 104. Petitioner again demanded his gun and Marshall attempted to duck back inside the apartment and shut the door. Id. He did not get the door all the way closed and Petitioner began pushing against the door from the outside. Id. At some point, Marshall stopped pushing against the door from the inside, Petitioner fell against the door, and the shotgun went off, hitting Marshall in the back of the head. Id.

Jemison then entered the apartment and stood over Marshall's body. T: 104-5. Jemison noticed the Ruger nine millimeter lying next to the body, picked it up, put it in the waist of his

---

[2]Petitioner has not submitted a Memorandum of Law with his habeas petition but simply describes his argument in two paragraphs and, additionally, refers the court to the argument detailed in his Appellate brief for that same ground.

[3]Hereinafter, "T" refers to the trial transcript dated February 7, 2001.

pants and exited the apartment. T: 105. At the same time, Petitioner entered the apartment and went into the living room where Kasheba Marshall ("Kasheba"), the victim's sister, was with four young children. T2: 31-32.[4] When Kasheba noticed that Petitioner had a shotgun, she gathered the children on the couch and laid over them to protect them. T2: 32. Petitioner pointed the shotgun at the head of one of the children and demanded his gun. Id. Kasheba begged Petitioner to shoot her instead of the child. Id. Petitioner then wandered around the living room, took five dollars from a table, and left the apartment. T2: 33. Petitioner was arrested the next day, read his rights, and signed a statement confessing to the murder of David Marshall. T3: 49; T4: 36-39.[5] Petitioner later contested these facts during his testimony at trial, claiming that Jemison shot David Marshall, and that his confession had been coerced. See generally T3.

### B. Procedural History

Petitioner was indicted in Westchester County, Indictment #00-00408, for one count of Murder in the Second Degree/Intentional Murder (N.Y. Penal Law § 125.25(1)), one count of Murder in the Second Degree/Depraved Indifference Murder (N.Y. Penal Law § 125.25(2)), and one count of Reckless Endangerment in the First Degree (N.Y. Penal Law § 120.25). Indictment, Docket #17. On March 13, 2001, Petitioner was convicted in a jury trial of one count of Murder in the Second Degree/Depraved Indifference Murder[6] and one count of Reckless Endangerment.

---

[4] Hereinafter, "T2" refers to the trial transcripts dated February 6, 2001.

[5] Hereinafter, "T3" refers to the trial transcripts dated February 13, 2001 and "T4" refers to the trial transcripts dated February 8, 2001.

[6] Petitioner was found Not Guilty on the first count of the indictment, Murder in the Second Degree/Intentional Murder. T5: 1077.

T5: 1077-78.[7] On May, 9, 2001, Petitioner was sentenced to an indeterminate term of twenty-two years to life on the murder count and to a consecutive indeterminate term of two and one-third to seven years on the reckless endangerment count.  Aff. in Opp. to Pet. at 5; T6: 19-20.

On May 11, 2001, Petitioner's counsel filed a direct appeal to the New York State Supreme Court of the Appellate Division, Second Department, alleging that: (1) the People had not proved the elements of Murder in the Second Degree; (2) the guilty verdict went against the weight of the evidence; (3) the testimony of the child in the case was not properly admitted; and (4) the sentence was excessive.  Resp't Ex. A (Appellate Brief).  By Decision and Order, the Appellate Division affirmed Petitioner's conviction, stating specifically that Petitioner's "contention that the evidence was legally insufficient to support a conviction of depraved indifference murder...is unpreserved for appellate review" and that "we [the Appellate Court] decline to reach it in the exercise of our interest of justice jurisdiction."  People v. Scott, 24 A.D.3d 800 (2d Dept. 2005).  Additionally, the court held that Petitioner's remaining claims were "unpreserved for appellate review or without merit."  Id.  Petitioner then sought leave to appeal to the New York State Court of Appeals, which was denied on April 19, 2006.  People v. Scott, 6 N.Y.3d 852 (2006).  On April 5, 2007, Petitioner timely filed this petition for a Writ of Habeas Corpus and has no other appeals or petitions pending.  Pet. at 7-8.

**II.    DISCUSSION**

    **A.    Standard of Review**

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas

---

[7]Hereinafter, "T5" refers to the trial transcript dated March 12, 2001.

corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Under the AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A); see also Picard v. Connor, 404 U.S. 270, 275 (1971).  In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights."  See Coleman v. Thompson, 501 U.S. 722, 731 (1991); see also Daye v. Attorney General of the State of New York, 696 F.2d 186, 190-91 (2d Cir. 1982).  The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C. § 2254(b), (c):

> (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied.  See Klein v. Harris, 667 F.2d 274, 282 (1981).  First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts. Picard v. Connor, 404 U.S. at 275-76.  "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' "  Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191).  In

5

other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature." Daye, 696 F.2d at 192. The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief. Klein, 667 F.2d at 282 (internal citations omitted). A claim may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in like fact situations, (3) asserted his or her claim in terms so particular as to call to mind specific constitutionally-protected rights; or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation. See Daye, 696 F.2d at 186; Irving v. Reid, 624 F. Supp. 787, 789 (S.D.N.Y. 1985).

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. Klein, 667 F.2d at 282. Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted. Id. (citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y.1977)). There is, however, another avenue available for exhaustion purposes. A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. See Klein, 667 F.2d at 282; see also Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to

proceed by filing a motion to vacate judgment pursuant to N.Y. Crim. Proc. Law § 440.10). If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial. Id. at 282-83.

Generally, a state prisoner has one year from the date his or her conviction becomes final to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled while ". . . a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). The limitations period may also be equitably tolled if a petitioner can show that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on time." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). After a petitioner has met these threshold requirements, a federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

    **B.**    **Petitioner's Claim**

        **1.**    *Petitioner's claim that his due process rights were violated because the evidence was legally insufficient to support a conviction of Depraved Indifference Murder is procedurally defaulted; additionally, Petitioner's claim that his due process rights were violated because the evidence was legally insufficient to support a conviction of Reckless Endangerment is without merit.*

Petitioner claims that his due process rights were violated because the evidence at trial was legally insufficient to support a conviction for both Depraved Indifference Murder and Reckless Endangerment. Pet. at 5-6; Resp't Ex. A (Appellate Brief) at 6-39. Respondent contends that, as to the conviction for Depraved Indifference Murder, Petitioner's claim is procedurally barred. Resp't Mem. of Law at 5-8, 10-19. Likewise, Respondent argues that, as to the conviction for Reckless Endangerment, Petitioner's claim has not been exhausted, or in the alternative, is without merit. Resp't Mem. of Law at 8-9, 20-23.

The Supreme Court held in Coleman v. Thompson, that a federal court may not review a claim in a habeas petition "when a state court declined to address a prisoner's federal claim[] because the prisoner had failed to meet a state procedural requirement." 501 U.S. 722, 730 (1991). This decision is grounded in the idea that the state has "independent and adequate state grounds" for such a dismissal and federal courts are ever mindful of the notions of "comity and federalism." Harris v. Reed, 489 U.S. 255, 260 (1989); Coleman, 501 U.S. at 730. In other words, "an adequate and independent finding of a procedural default [by a state court] will bar federal habeas review of the federal claim." Harris, 489 U.S. at 262.

Here, the Appellate Division determined that Petitioner's "contention that the evidence was legally insufficient to support a conviction of depraved indifference murder...is unpreserved for appellate review" and that "we [the Appellate Court] decline to reach it in the exercise of our interest of justice jurisdiction." People v. Scott, 24 A.D.3d 800 (2d Dept. 2005). Such a procedural default is an independent and adequate state ground for denial of a claim and, therefore, precludes a federal court from considering the matter on habeas review. See also Hughes v. Phillips, 457 F. Supp. 2d 343, 369 (S.D.N.Y 2006)("[T]he Appellate Division's

8

invocation of the procedural bar was an independent and adequate State ground for denial of relief that prevents habeas relief..."). However, a Petitioner can overcome such a procedural default if he or she can show "cause for the procedural default and prejudice attributable thereto" (Harris, 489 U.S. at 262) or "actual innocence" (Schlup v. Delo, 513 U.S. 298 (1995)). Petitioner in this case has provided no proof of either cause and prejudice or actual innocence and, therefore, his claim must be dismissed.

Petitioner's claim regarding his conviction on the Reckless Endangerment charge is not procedurally barred, however, by the Appellate Division's decision because that decision only addressed Petitioner's conviction on the Depraved Indifference Murder charge. Respondent contends that the claim regarding Reckless Endangerment should be dismissed because Petitioner failed to raise such a claim in his direct appeal and such a claim would, therefore, be unexhausted at the state level. Resp't Mem. of Law at 8.

Although Petitioner does not categorize it as such, Petitioner did raise what could be considered an argument regarding the legal sufficiency of the evidence in the second point of his Appellate Brief. Resp't Ex. A (Appellate Brief) at 35-39. In this particular point, Petitioner contends that the verdict went against the weight of the evidence and he details, for both the Depraved Indifference Murder charge and the Reckless Endangerment charge, why the evidence in both instances was insufficient to support such a conviction. Id. at 24-39. Because this could be construed as raising the issue of the sufficiency of the evidence on appeal, this court will treat the issue as being exhausted and will consider the claim on its merits. Furthermore, AEDPA states that "an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

State." 28 U.S.C. § 2254(b)(2).  Thus, this court will consider Petitioner's second claim.

Generally, whether there was sufficient proof to convict a person of a crime pursuant to state law is a state issue.  United States v. Hon. H. W. Follette, 257 F.Supp. 533, 534 (S.D.N.Y. 1965) (citing Grundler v. State of North Carolina, 283 F.2d 798, 801 (4th Cir. 1960)).  Because issues involving the sufficiency of evidence are state issues, they "[do not] rise to constitutional dimensions."  Griffin v. Martin, 409 F.2d 1300, 1302 (2d Cir.1969).  However, evidentiary deficiencies can rise to the level of a due process violation under the Fourteenth Amendment in certain instances.  Follette, 257 F.Supp. at 534, Grundler, 283 F.2d at 881.  It is then that a state prisoner can seek relief from the federal courts through a habeas corpus petition.  Id.  In such a case, the petitioner must prove that given the evidence produced at trial, " 'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.' "  Fama v. Comm'r of Corr. Serv., 235 F.3d 804, 811 (2d Cir. 2000) (quoting Jackson v. Virginia, 443 U.S. 307, 324, (1979)). The reviewing federal court is required to "consider the evidence in the light most favorable to the prosecution and make all inferences in its favor."  Fama, 235 F.3d at 811, see also Jackson, 443 U.S. at 319; Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996).  However, the reviewing court is not required to determine whether it in fact believes the evidence introduced at trial established guilt beyond a reasonable doubt.  Fama, 235 F.3d at 811.

Additionally, "the resolution of issues of credibility is exclusively the province of the jury."  United States v. Shulman, 624 F.2d 384, 388 (2d Cir. 1980).  See also United States v. Taylor, 464 F.2d 240, 245 (2d Cir. 1972)("[T]he weighing of credibility is for the jury, not the judge"); United States v. Khan, 53 F.3d 507, 514 (2d Cir. 1995)([T]he credibility of witnesses is the province of the jury and we simply cannot replace the jury's credibility determinations with

our own"); Mallette v. Scully, 752 F.2d 26, 31 (2d Cir.1984)("In making this assessment [of legal sufficiency of the evidence], the Court must defer to the jury's determination regarding conflicting evidence, the weight given to such evidence, the credibility accorded to the testimony of witnesses, and the inferences drawn from the evidence"). Finally, "the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." United States v. Danzey, 594 F.2d 905, 916 (2d Cir.1979).

The charge of Reckless Endangerment centers around Petitioner's actions after the murder, when Petitioner threatened Kasheba and the children with the shotgun. Petitioner asserts that the testimony of the eyewitness should be disregarded because the witness was ten years old at the time. Pet. at 6, Resp't Ex. A (Appellate Brief) at 35-39. As the determination of the credibility of a witness is solely the province of the jury at trial, this court will not overturn such a determination upon habeas review. Additionally, Petitioner makes the argument that Jemison testified that the shotgun was only loaded with one shell which was discharged when Petitioner fell against the door. Pet. at 6. Hence, Petitioner claims there could not have been a grave risk of death to anyone in the room, which is an element of Reckless Endangerment, because the gun was not loaded. Id. Again, the testimony at issue on this point is conflicting, with Jemison testifying that he loaded the shotgun with "four or five" rounds earlier in the afternoon. T: 101. It is credible, then, that the jury believed this testimony and inferred that the gun was loaded at the time of the incident. Hence, this court will not reassess the jury's determination on this point. Therefore, viewing the evidence in the light most favorable to the prosecution, this court finds that Petitioner has not carried his burden to prove that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt" and Petitioner's claim must be dismissed. Jackson,

443 U.S. at 324.

## CONCLUSION

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the instant habeas petition should be dismissed.  As the petition presents no questions of substance for appellate review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue.  Rodriguez v. Scully, 905 F.2d 24 (2d Cir. 1990) (per curiam); Alexander v. Harris, 595 F.2d 87, 90-91 (2d Cir. 1979).  I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. §1915(a) that an appeal from this order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

Dated: ~~May~~ June 1, 2010
      White Plains, NY

                                        Respectfully submitted,

                                        LISA MARGARET SMITH
                                        United States Magistrate Judge
                                        Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

Honorable Kenneth M. Karas, U.S.D.J.
300 Quarropas Street
White Plains, New York 10601

Michael Scott #01-A-2906
Clinton Correctional Facility
P.O. Box 2002
Dannemora, New York 12929

John Sergi, Assistant District Attorney
Westchester County District Attorney's Office
111 Dr. Martin Luther King Jr. Blvd.
White Plains, New York 10601